## N. Y. COMMON PLEAS.

### In Matter of the Assignment of F. MAYER & Co.

*Assignee — What amounts to misconduct and calls for his removal.*

On October thirty-first, the assignee drew out of the moneys of the estate deposited in the Central National Bank $8,000, and on November fifth, he drew the further sum of $7,000. Both these drafts were entered on the cash book of the assignee on the last mentioned day. On November ninth, one of the attorneys for the parties making this motion for the removal of the assignee, saw these entries and asksd to see the assignee's check book. The assignee refused to show the check book, and said that his official check book was his private affair. His attention being called to the fact that these entries had challenged inquiry, he thought it best, for some reason that does not appear, to cause the words "special deposit" to be added to the entries.

*Held, first,* that the assignee's refusal to show the check book was improper and contrary to the rules of this court.

*Second.* He erred in saying that his official check book was his private affair. When an assignee voluntarily assumes the position of a trustee for others, his action respecting property in which they are interested, is in no sense his private affair.

*Third.* An assignee, without criminal intent, may, from pure good nature, lend to a necessitous friend, without security, the money of the assigned estate; but if he does so he violates his duty and becomes liable to removal. The law will not tolerate any action, however benevolent

may be the motive that prompted it, which turns the trust fund from the use to which the creation of the trust directed its application.

*Fourth.* The conduct of the assignee, in concealing from the creditors the purpose for which the money was drawn, and in withholding from the court evidence that he undoubtdely possesses, as to the times at which he deposited the money, though he promised to produce the evidence, amounts to misconduct within the meaning of the assignment act, and calls for his removal.

*Special Term, December,* 1883.

*Blumenstiel & Hirsch,* for petitioners, for motion.

*Richard S. Newcombe,* for assignee, opposed.

Van Hoesen, *J.* — Most of the grounds assigned for the removal of the assignee are unsubstantial. Whatever may be the true construction of section five of the assignment act, it would be absurd to hold the assignee responsible for the act of the court in prematurely ordering him to file a provisional bond. I do not say that the time for the filing of a provisional bond had not arrived when the order for the filing of it was made; but I do say that, conceding such to be the fact, the assignee should not be made the scapegoat for the errors of the court. Again, the charge that the assignee has paid some preferred debts before the attorneys for the moving parties have succeeded in obtaining any evidence to show the assignment to be fraudulent, is not entitled to serious notice. The assignee deserves praise instead of censure for having proceeded without delay to execute his trust and pay the preferred debts. I should not hesitate for a moment to remove an assignee who, instead of performing his duty, delayed the execution of his trust and the payment of preferred creditors for the purpose of enabling non-preferred creditors to hunt for evidence that the assignment was fraudulent. Nor is any fault to be found with the assignee for taking the assignment for his chart and compass and paying the debts in the order therein set down. If some of the preferred debts are not matured, it is nevertheless his duty to pay them, making the

Matter of Mayer & Co.

necessary deduction of interest. It is his duty to carry the assignment into effect as well as to defend its validity. If any creditor believes that the assignment is fraudulent in fact, or fraudulent because it conflicts with the law, he must take proceedings to have it set aside; and if he does not take such proceedings he has no right to ask that the assignee delay, even for an hour, the performance of what the assignment requires him to do.

Without discussing all the accusations made against the assignee, I shall proceed to consider one charge that seems to me to be very serious. I say here that I do not believe that the assignee intended to misappropriate a dollar of the estate. It is proved that he is a merchant who bears an unblemished reputation and enjoys the confidence of many estimable men. I think he has made a serious mistake, however, in one matter, and I regret that he has not thought it best to be frank with the court with respect to it.

It appears that on October thirty-one the assignee drew out of the moneys of the estate deposited in the Central National Bank $8,000, and that on November five he drew the further sum of $7,000. Both these drafts were entered on the cash book of the assignee on the last mentioned day. On November nine, one of the attorneys for the parties making this motion saw these entries and asked to see the assignee's check book. The assignee refused to show the check book. This refusal was improper, for the rules of this court expressly provide (*Rule* 19) that "the assignee shall keep full, true, exact and regular books of account of all receipts, payments and expenditures of money by him, which said books shall always, during business hours, be open to the inspection of any person interested in the trust estate." The assignee said that his official check book was his private affair. In this he erred. He had voluntarily assumed the position of a trustee for others, and his action respecting property in which they were interested was in no sense his private affair. But his attention was called to the fact that these entries had challenged

inquiries, and then he thought it best, for some reason that does not appear, to cause the words "special deposits" to be added to the entries. Why those words were not written at the time the entries were made, and why they were inserted after inquiries had been made as to the purpose for which the money had been drawn from the bank, no explanation has been given.

The assignee, does, however, give an explanation of the circumstances under which the money was taken by him. He says that the money was drawing no interest, and that for the purpose of getting interest upon it he placed it on deposit with Charles Minzesheimer & Co., who agreed to pay interest at the rate of four per cent, and who pledged with him three per cent government bonds as collateral security for the loan. As proof that such a transaction took place, he produces two receipts from Charles Minzesheimer, the dates of which correspond with the dates of the entries in the cash book to which I have referred. The presumption is, of course, that these receipts were given at the times at which they are dated, and perhaps it was because of this presumption that the assignee does not state in his affidavit that he made a special deposit of $8,000 with Minzesheimer on the thirty-first of October, or that he made a special deposit of $7,000 on the fifth of November. Mr. Minzesheimer, in his affidavit, is silent as to the times at which these "special deposits," as they are called, were made. He says that the assignee placed in his hands $15,000 of the money of the assigned estate, but he does not say when this was done. This being the state of affairs appearing by the affidavits at the time, the motion for the removal of the assignee was argued. The counsel who appeared in support of the motion called attention to the fact that there was no distinct assertion that the special deposits had been made before notice of motion for the assignee's removal was served, and that it was essential to the completeness of the assignee's explanation that he should show that the so-called special deposits were not an

after-thought, but were actually made at the date of the receipts. To this the counsel for the assignee assented, and he said that he would produce Mr. Minzesheimer's affidavit to prove that the deposits were made— the first on the thirty-first of October and the second on the fifth of November. I have waited for several days in expectation of receiving an affidavit, if not from Minzesheimer, at least from the assignee, that the deposits were actually made at the times the receipts bore date. No such affidavit has been furnished, and the question for me now to determine is whether, in view of the fact that I do not believe the estate to be in danger of losing the $15,000, and in view of the fact that many of the largest creditors are desirous that the assignee should be retained, I should hold that, as the charge is really one of misappropriating money, the burden of proof is on the moving party, and that (though the assignee's explanation is not satisfactory) the evidence offered against him is insufficient to establish the charge, or whether I should hold that the circumstances proved by the petitioners created so strong a probability of the assignee's misconduct as to require a full explanation of his use of the money, and that as he had it in his power to prove, by his own oath, that the deposits were made at the times of the dates of the receipts, his failure to produce such proof warrants the strongest inference against him, and justifies the conclusion that the receipts of Minzesheimer are only fabricated evidence, designed to conceal the truth as to the use made of the $15,000. Strong presumptions arise from the suppression as well as from the fabrication of evidence.

What inference is fairly to be drawn from the fact that the assignee refused to show his check book, which must have contained entries relating to the withdrawal from the bank of these two sums, $8,000 and $7,000 ? Why was the cash book afterwards changed by the inserting of the words "special deposit ? " Why is not the affidavit of the assignee produced when he is informed that it is of the highest importance that he should show that the money was actually deposited with

Matter of Mayer & Co.

Minzesheimer at the dates of the receipts. Why has he not explained his inability to procure the affidavit of Minzesheimer? What inference is to be drawn from the fact the assignee, when challenged to produce proof that the special deposits were made at the dates of the receipts, voluntarily undertakes to furnish such proof (which, if it exists, must necessarily be in his own hands), and then fails to produce it? The answer seems to be that the assignee has made such use of the money that he cannot disclose the purpose to which it was applied. I say again, that I do not believe that he took it for his own benefit, or that he has not replaced it, or that the estate will lose it. An assignee, without criminal intent, may, from pure good nature, lend to a necessitous friend, without security, the money of the assigned estate; but if he does so he violates his duty, and becomes liable to removal. It may very well be that the assignee has not, but that others have, had the benefit of these two sums; but the law will not tolerate any action, however benevolent may be the motive that prompted it, which turns the trust fund from the use to which the creator of the trust directed its application.

I think I am bound to decide that the conduct of the assignee in concealing from the creditors the purpose for which the money was drawn, and in withholding from the court evidence that he undoubtedly possesses as to the times at which he deposited the money, though he promised to produce the evidence, amounts to misconduct within the meaning of the assignment act, and calls for his removal.

An order may be entered, therefore, for the removal of the assignee, and for the appointment of Emanuel B. Hart as substituted assignee in his room; that the assignee, Simon Danzig, upon the service upon him of a copy of the order, deliver and surrender to Emanuel B. Hart, the substituted assignee, all and singular the property which has come into his possession or under his control by virtue of the assignment; that said Danzig account before Frank A. Ransom, who is appointed referee to take and state the accounts of said